IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NATYYO GRAY, #181799                                                              PETITIONER

VS.                                                    CIVIL ACTION NO.  3:22-cv-199-CWR-FKB

SUPERINTENDENT BRAND
HUFFMAN                                                                           RESPONDENT

**REPORT AND RECOMMENDATION**

Before the Court is the petition for habeas corpus relief, filed by Natyyo Gray.  *See* 28 U.S.C. § 2254.  *See* [1].  Respondent has filed a Motion to Dismiss [5] pursuant to 28 U.S.C. § 2244(d), to which Gray has responded, and Respondent has filed a reply.  *See* [11], [16].  For the reasons explained below, the undersigned recommends that the Motion to Dismiss be granted.

I.      FACTS AND PROCEDURAL HISTORY

In his petition, Gray challenges his February 21, 2013 conviction by a jury in the Circuit Court of Hinds County, Mississippi, on the charge of capital murder.  *See* [5-2]; *Gray v. State*, 202 So. 3d 243, 250 (Miss. Ct. App. 2015), *reh'g denied*, Jul. 26, 2016, *cert. denied*, 203 So. 3d 1133 (Miss. 2016).  The charge stemmed from from the November 20, 2011 death of Gray's thirteen-month-old daughter.  *Gray*, 202 So. 3d at 247.  On February 28, 2013, the circuit court sentenced Gray to a term of life in prison without the possibility of parole in the custody of the Mississippi Department of Corrections ("MDOC").  *See* [5-1].

Through appellate counsel, Gray appealed his conviction, raising multiple claims of ineffective assistance of trial counsel.  *Gray*, 202 So. 3d at 250-251.  The Mississippi Court of Appeals denied relief, but concluded that Gray was free to seek post-conviction relief on his ineffective assistance of trial counsel claims.  *Id.* at 251.  In a pro se supplemental brief, Gray

raised twenty-four additional claims. *See* [1-3] at 4-7; [6-20] at 114-117. The Court of Appeals found that Gray's pro se arguments were without merit and, of particular note, addressed his claims related to life insurance on his daughter obtained by Phyllis Brown, the victim's mother; the State's medical expert testimony; and the mental health of Phyllis Brown. *Gray*, 202 So. 3d at 252-253, 255-259. The Court of Appeals affirmed Gray's conviction and sentence on November 3, 2015, and denied rehearing on July 26, 2016. *Id.* at 243; [6-21] at 12. The Mississippi Supreme Court denied Gray's petition for a writ of certiorari on October 20, 2016. *Gray*, 203 So. 3d at 1133 (table); *see also* [6-22] at 2.

Gray signed his state application or motion for post-conviction relief on October 17, 2019. [6-23] at 227. In his application, he raised various claims of ineffective assistance of counsel. Gray also raised claims of prosecutorial misconduct and newly-discovered evidence related to the prosecution's alleged failure to produce email communications between a deceased detective and Phyllis Brown, between the same detective and two life insurance companies that had issued policies on the infant victim, and between the same detective and the prosecution's expert medical witness. *Id.* at 186-187. In affidavits submitted by trial counsel and attached to the application, the attorney stated that police had forwarded the emails to him in January 2017, following the death of the investigating detective. *Id.* at 58, 158-159. In a written order, the Mississippi Supreme Court denied Gray's motion for post-conviction relief on April 19, 2021, finding that his claims of prosecutorial misconduct and newly discovered evidence lacked "an arguable basis." *Id.* at 12-13. As for his claims of ineffective assistance of counsel, the court concluded that Gray failed to satisfy the standards set forth in *Strickland v. Washington*, 466 U.S.

668 (1984). The Mississippi Supreme Court denied Gray's motion for rehearing/reconsideration on April 29, 2021. *Id.* at 2.

Gray signed his present petition for habeas corpus relief on April 14, 2022, and it was filed in this Court on April 18, 2022. [1] at 15. Because it may be reasonably inferred that a prisoner delivered his petition to the prison officials for mailing on the date he signed it, the Court will consider April 14, 2022 as the date of filing for purposes of the federal habeas statute of limitations. *See United States v. O'Kaine*, 971 F.Supp 1429, 1480 (S.D. Ga. 1997); *see also Punch v. State of Louisiana*, 1999 WL 562729, *2 n.3 (E.D. La. July 29, 1999)(unpublished) ("For pleadings submitted by prisoners acting pro se, the Fifth Circuit has recognized that a 'mailbox rule' applies and that the date when prison officials receive the pleading from the plaintiff for delivery to the court is considered the time of filing for limitations purposes."). Gray raises several grounds for relief, including multiple claims of ineffective assistance of counsel (ground one), prosecutorial misconduct (ground two), newly discovered exculpatory evidence (ground three), and introduction of inadmissible evidence, along with violations of *Daubert* expert opinion requirements (ground four). [1] at 5-10.

The State responded with its Motion to Dismiss [5], arguing that the petition is untimely. For the reasons explained below, the undersigned recommends that the Motion to Dismiss be granted.

II.   DISCUSSION

The State asserts that Gray's petition is untimely under 28 U.S.C. § 2244(d). Amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2244(d) reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.
>
> The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1996).

The AEDPA, enacted on April 24, 1996, imposed a one-year statute of limitations for the filing of a federal habeas petition. Thus, unless the narrow exceptions of § 2244(d)(1)(B)-(D) apply, a federal habeas petition must be filed within one year of the final judgment of the defendant's conviction, subject to tolling for the period when a properly-filed motion for post-conviction relief is pending in state court. *See Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998), *cert. denied*, 199 S. Ct. 847 (1999). AEDPA's statute of limitations period may also be equitably tolled if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010)(internal quotations and citations omitted); *see also*

*Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000)(equitable tolling may apply to extend the one-year statute of limitations period, but only in rare and exceptional circumstances).

<u>A. Statutory and Equitable Tolling</u>

The State asserts that Gray's petition is untimely filed. A review of the relevant dates shows that the State is correct. The trial court sentenced Gray to life without parole on February 28, 2013. The Mississippi Court of Appeals affirmed his conviction and sentence on November 3, 2015, and the Mississippi Supreme Court denied certiorari review on October 20, 2016. Gray's conviction became final on January 18, 2017, ninety days after the Mississippi Supreme Court denied certiorari review, and the date by which any petition for writ of certiorari would have been due in the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003); *see also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Thus, under AEDPA, Gray's federal habeas petition was due one year from January 18, 2017, or by January 18, 2018, without the benefit of statutory or equitable tolling. *See* 28 U.S.C. § 2244(d)(1)(A). Instead, Gray signed his federal habeas petition on April 14, 2022, and it was filed in this Court on April 18, 2022, over four years after the expiration of the AEDPA statute of limitations.

As for statutory tolling, Gray's October 17, 2019 state motion for post-conviction relief, filed nearly twenty months after the January 18, 2018 deadline for AEDPA purposes, had no impact on the already-expired federal statute of limitations. *See Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999)(expired limitations period cannot be revived by filing a state habeas petition). And it is well-settled that the federal AEDPA statute of limitations runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *see* 28 U.S.C. § 2244(d)(1)(A), *not* from the date on which the

5

state court issued a decision on any motion for post-conviction relief, as Gray argues. *See Roberts*, 319 F.3d at 694.

Gray's petition, furthermore, does not set forth any circumstances which are so "rare and exceptional" as to warrant equitable tolling of the AEDPA statute. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)(AEDPA may be equitably tolled, albeit only in "rare and exceptional circumstances"); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)(for equitable tolling to apply, Petitioner must prove that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way).

B. "Actual Innocence"

In his third ground for relief, Gray argues that his Fifth and Sixth Amendment rights were violated on multiple grounds related to "newly discovered exculpatory evidence," and thus, he should be excepted from AEDPA's time bar. Gray argues that there are newly discovered email communications between a police investigating detective and Phyllis Brown that "evince prior relationship," relate to life insurance proceeds on the infant victim, and demonstrate the police's failure to investigate the mother's actions and mental conditions. [1] at 8. He also asserts that police emails show newly discovered evidence of medical reports from the State's medical expert that were not disclosed to him prior to trial. *Id.* In his Response [11] to the Motion to Dismiss, he couches these arguments in terms of violations of *Brady v. Maryland*, 373 U.S. 83, and further argues that "newly discovered existence of forensic science raises the direct reasonable doubt that the injuries sustained by the minor child could not have occurred while the child was in the purported care of the Petitioner." [11] at 2. He asserts that these email communications proving his innocence were forwarded to his trial attorney by a police detective

6

in January 2017 after the death of the investigating detective. *Id.* at 3; *see also* [6-23] at 58, 158-159 (affs. of trial counsel). The Mississippi Supreme Court considered and rejected these arguments in reaching its decision on Gray's motion for post-conviction relief. [1-11] at 2.

Actual innocence, if proven, is an exception to the AEDPA's one-year limitation period. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "Actual innocence" does not act as a free-standing ground for federal habeas relief, but, instead, "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *McGuiggin*, 569 U.S. at 386; *see also Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018)(en banc), *cert. denied*, 139 S. Ct. 573 (2018). To prove actual innocence, a petitioner must convince the Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). To be credible, a *Schlup* "gateway" claim requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The "*Schlup* standard is demanding and permits review only in the 'extraordinary'" case. *House v. Bell*, 547 U.S. 518, 538 (2006)(quoting *Schlup*, 513 U.S. at 327). "Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within reach of [petitioner's] personal knowledge or reasonable investigation.'" *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2714 (2019).

Gray fails to meet the *McQuiggin* standard for pleading actual innocence sufficient to except his petition from the AEDPA's one-year limitation period. Petitioner has failed to identify any "new" evidence that would preclude a reasonable jury from finding him guilty. The

emails between the victim's mother and the detective merely illustrate her efforts to remain informed on the status of the investigation and are not exculpatory in nature. [6-23] at 171-180. Evidence regarding insurance policies on the life of the victim is not "new" as it was heard by the jury at trial and considered on direct appeal as a part of Gray's argument that the prosecution failed to disclose the policies during discovery. *Gray*, 202 So. 3d at 252-253 (finding no violation of *Brady*). The medical articles he attached to his post-conviction relief application pre-date his trial or do not assist his claims of innocence, and standing alone, they do not constitute admissible evidence. *See* [6-23] at 66-73.

As for any records relating to the mental condition of the victim's mother, Phyllis Brown, the trial court judge quashed the defense's pretrial subpoena seeking records related to any psychological treatment sought by Brown and denied a related defense motion for disclosure of Brown's mental health treatment records based on relevancy. *See* [6-3] at 75-76; [6-11] at 29-43. At trial, defense counsel again attempted to obtain records and to explore any evidence of psychological treatment sought by Brown, which the trial court again denied. [6-11] at 29-43. While the trial court ruled that this evidence was unavailable, defense counsel pursued other methods to discredit the victim's mother and show that the victim's injuries could have occurred while the victim was in the care of the mother. Thus, the Court concludes that Petitioner has failed to show that, if this evidence had been produced, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

Turning to the emails between the State's medical expert and the deceased detective, Gray argues that the emails demonstrate that the State's medical expert failed to disclose "exculpatory medical reports and photographs." The record demonstrates otherwise. To begin

with, there were only two emails at issue, both of which were sent by the State's medical expert to the deceased investigating detective within one day of the victim's death. [6-23] at 169-170. Both emails contain attachments, but only the email generated the day after the victim's death contained a descriptor of "photos and updated reports." *Id.*

To be sure, at trial the defense counsel subjected the State's medical expert to a full cross-examination regarding his final opinion on the victim's injuries and how long she would have survived after suffering those injuries. [6-12] at 122-149. The State's medical expert testified that he based his opinions on his observation of the victim when she was brought to the hospital emergency room, his post-mortem examination of the victim, and various reports issued by treating medical personnel, as well as his attendance at the autopsy of the victim. *Id.* at 66-101, 119-149; [6-13] at 1-10. The doctor testified on cross-examination that he never provided a written report to the Hinds County District Attorney's office as to what his opinion would be at trial. [6-12] at 122. And the record shows that prior to trial, the State provided the defense with the autopsy report, hospital medical records, and emails from treating physicians to the district attorney regarding the victim's time of death. [6-3] at 32-33. Moreover, the investigating detective testified at trial about post-mortem photos taken of the victim, his methods of investigation, and his observations of the victim. [6-10] at 29-92. While these emails, generated within one day of the victim's death, were not presented at trial, the sender and recipient both testified about their ultimate conclusions as to the medical reports and photos related to the victim's death, all of which had been produced to the defense prior to trial. Petitioner has failed to convince the Court that these emails could have contained "new reliable" exculpatory evidence. Accordingly, this evidence fails to meet the *Schlup* standard.

Consequently, the undersigned concludes that Petitioner has shown no reason he should be excused from meeting the AEDPA deadline and, therefore, recommends that the petition be dismissed as untimely filed.

III.   CONCLUSION

For the reasons set forth in this Report and Recommendation, the undersigned recommends that the Motion to Dismiss [5] be granted and that this case be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy[1] shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 17th day of January, 2023.

/s/ F. Keith Ball                    .
UNITED STATES MAGISTRATE JUDGE

---

[1] Where a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court.  *See* Fed. R. Civ. P. 5(b)(2)(C).